# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEPHEN LUCI

       Petitioner,

   v.                               CIVIL ACTION NO. 3:07-cv-11
                                     (Judge Maxwell)

DAVID BALLARD, WARDEN,
MOUNT OLIVE CORRECTIONAL COMPLEX

       Respondent.

## REPORT AND RECOMMENDATION
## 28 U.S.C. § 2254

On January 22, 2007, the *pro se* petitioner, Stephen Luci, [hereinafter referred to as "petitioner"] filed a Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody.[1] On March 6, 2007 petitioner was granted leave to proceed in forma pauperis. On March 14, 2007, the Court sent petitioner a Hill v. Braxton Notice. Petitioner responded to the notice on April 10, 2007.[2] On August 8, 2007, the respondent, David Ballard, [hereinafter referred to as "Respondent"], was ordered to respond to petitioner's § 2254 petition.[3] Respondent filed his Answer on October 4, 2007, conceding petitioner's motion was timely filed but alleging petitioner's claims were not exhausted and are without merit.[4] Respondent also filed a Motion for

---

[1] Doc. No. 1, hereinafter referred to as "Pet. Mot." Attachments to petitioner's §2254 motion are hereinafter referred to as "Pet. Ex. X."

[2] Doc. No. 13

[3] Doc. No. 19

[4] Doc No. 24

Summary Judgment and Memorandum in support thereof.[5]  On October 5, 2007, the Court sent petitioner a <u>Roseboro</u> Notice.  On November 2, 2007, petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment.[6]

This matter is pending before me for additional review and report and recommendation.

# I. PROCEDURAL HISTORY

## A. PROCEEDINGS IN STATE COURT

### 1. The Monongalia County Conviction

On September 10, 1999, a Monongalia County, West Virginia, Grand Jury indicted petitioner on one count of Felony Sexual Assault in the First Degree (Count 1) and one count of Felony Sexual Abuse by a Parent, Guardian or Custodian (Count Two).  (Resp't Ex. 1).  On June 12, 2000, after a three-day trial, petitioner was found guilty on both Counts.  (Resp't Ex. 2).  By order entered August 23, 2000, petitioner was sentenced to concurrent sentences of 15 to 35 years imprisonment on Count One and 5 to 15 years imprisonment on Count Two, for a combined sentence of 15 to 35 years imprisonment.  (Resp't Ex. 3).

### 2. Direct Appeal to the West Virginia Supreme Court of Appeals

On December 14, 2000, petitioner, by counsel, filed a direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals [hereinafter referred to as WVSCA].  In the appeal, petitioner asserted the following errors at trial:

1. The testimonial evidence of Autumn Moore was insufficient to establish first degree sexual assault and sexual assault of a minor by a custodian as a matter of

---

[5] Doc. No. 25, hereinafter referred to as "Resp't Mot."  Attachments to Respondent's Motion for Summary Judgment are hereinafter referred to as "Resp't Ex. X."

[6] Doc. No. 30

law and the trial court committed reversible error by not granting the defendant's motion for judgment of acquittal.

2.      Permitting expert testimony that sexual abuse could have occurred was more prejudicial than probative under Rule 403 and constituted plain and prejudicial error.

3.      The trial court erred in not recusing himself from this proceeding.

4.      The trial court committed plain error in allowing expert testimony concerning post-traumatic stress disorder that is also referred to as rape-trauma syndrome.

(Resp't Ex. 4).

By order entered February 21, 2001, the WVSCA refused petitioner's appeal. (Resp't Ex. 4). Petitioner received permission from the Court to file a second appeal and filed his second appeal on May 7, 2001.[7] (Resp't Ex. 5). By order dated July 5, 2001, the WVSCA refused petitioner's second appeal. (Id.).

### 3.     Habeas Petition Filed in the Circuit Court of Monongalia County

On June 27, 2002, petitioner, by counsel, filed a Petition for Writ of Habeas Corpus in the Circuit Court of Monongalia County. In his petition, petitioner alleged the following nineteen grounds for relief:

1.      The statute under which the convictions were obtained was unconstitutional;

2.      The indictment shows on its face that no offense was committed;

3.      The prosecuting attorney suppressed evidence helpful to the defendant;

4.      The State knowingly used perjured testimony in the trial of this matter;

---

[7] Petitioner alleges he filed his second appeal between March 2, 2001 and March 16, 2001 and that the Circuit Court erroneously failed to indicate such fact on the court docket. (See Doc. No. 13, Ex. A). The Court need not resolve the issue of the whether petitioner filed his second appeal in March 2001 or May 2001 because the issue has no bearing on the Court's ultimate determination petitioner's § 2254 motion was timely filed.

5.      The performance of trial counsel constituted ineffective assistance of counsel;

6.      The defendant's convictions and sentences violated the prohibition against double Jeopardy;

7.      The defendant did not receive a preliminary hearing;

8.      The procedures before the Grand Jury were prejudicial and improper;

9.      There were fatal defects in the indictment;

10.      The State failed to timely disclose Grand Jury minutes;

11.      The trial court made constitutional errors in evidentiary rulings;

12.      The trial court erred in its instructions to the jury;

13.      The prosecuting attorney made improper and prejudicial statements in the trial of this matter;

14.      The evidence presented was insufficient to sustain the conviction;

15.      The defendant was impermissibly absent from part of the proceedings;

16.      The defendant received mistaken and erroneous advice of counsel regarding parole or probation eligibility;

17.      The Court permitted the investigating officer to remain at counsel table during the Testimony of other witnesses prior to taking the stand in violation of the Defendant's right to sequester witnesses;

18.      The Prosecuting Attorney's conduct was improper;

19.      The Court committed several additional errors of constitutional dimension.

(Resp't Ex. 6).

On September 25, 2002, petitioner, by counsel, filed an Amended Petition for a Writ of Habeas Corpus and his Memorandum of Law. Petitioner alleged the following twenty grounds for relief:

1.      The performance of trial counsel constituted ineffective assistance of counsel;

2.      The prosecuting attorney suppressed evidence helpful to the defendant;

3.      The trial court made constitutional errors in evidentiary hearings;

4.      The State knowingly used perjured testimony;

5.      There were fatal defects in the indictment;

6.      The prosecuting attorney made improper and prejudicial statements in the trial of this matter;

7.      The defendant received mistaken and erroneous advice of counsel regarding parole or probation eligibility;

8.      The statute under which the convictions were obtained is unconstitutional;

9.      The indictment shows on its face that no offense was committed;

10.     The defendant's convictions and sentences violated the prohibition against double jeopardy;

11.     The defendant did not receive a preliminary hearing;

12.     The procedures before the Grand Jury were prejudicial and improper;

13.     The State failed to timely disclose Grand Jury minutes;

14.     The trial court erred in its instructions to the jury;

15.     The evidence presented was insufficient to sustain the convictions;

16.     The court permitted the investigating officer to remain at counsel table during the Testimony of other witnesses prior to taking the stand in violation of the Defendant's right to sequester witnesses;

17.     The Prosecuting Attorney's conduct was improper;

18.     The Court committed several additional errors of constitutional dimension;

19.     The Court failed to follow the mandatory joinder rule; and

20.     The defendant was the victim of malicious prosecution.

(Resp't Ex. 7 at 4).

By order entered April 24, 2004, the Circuit Court of Monongalia County ordered the state to answer to the allegations raised in issues 1, 2, 7 in petitioner's Amended Petition. (Pet. Ex. 2 at 3). The state responded, and the Circuit Court summarily dismissed all the issues alleged in petitioner's Amended Petition filed September 25, 2002, except issues 1, 2, and 7.[8] (Id.)

On August 23, 2004, petitioner, *pro se*, filed an Amended Petition of Writ of Habeas Corpus with the Circuit Court of Monongalia County and alleged the following grounds for relief:[9]

1. Petitioner's Constitutional protections against Double Jeopardy as afforded him by both Article III, § 5 of the West Virginia Constitution and Amendment V and Amendment XIV of the United States Constitution were violated resulting in Petitioner illegal trial, conviction, sentences and incarceration;
   A. Multiple Trials

---

[8] The Court dismissed claims 3, 6, 12, 13, 14, 15, 16, 17, 18, 19, and 20 finding that a habeas corpus proceedings is not a substitute for a writ of error, and that ordinary trial error not involving constitutional violations is not cognizable in habeas corpus in accordance with State ex rel McMannis v. Mohn, 464 U.S. 831 (1983). The Court dismissed claims 4, 5, 8, 9, 10, and 11 finding that a court found that the Petitioner was not entitled to relief, or that the contentions and grounds advanced had been previously and finally adjudicated or waived, and therefore refused and dismissed these grounds pursuant to W. Va. Code 52-4A-3.

[9] The Circuit Court, in its Order setting the Omnibus Hearing, summarized petitioner's amended claims as follows: 1) double jeopardy; 2) improper jury instructions; 3) unconstitutional statutes; 4) court lacked jurisdiction (void indictment and defective indictment); 5) state withheld exculpatory evidence; 6) state failed to timely disclose grand jury minutes; 7) insufficient evidence; 8) prosecutor used false, misleading and perjured testimony which substantially influenced the grand jury in order to obtain an indictment; 9) prosecutor used perjured testimony to obtain an illegal conviction against Petitioner; 10) court allowed improper testimony in the trial of this matter; 11) trial court gave no limiting instruction to the jury; 12) trial court failed to conduct proper evidentiary hearings; 13) trial court gave improper evidentiary rulings; 14) prosecuting attorney made improper and prejudicial statements in the trial of this matter; 15) ineffective assistance of counsel; 16) denial of right to confrontation; and 17) denial of right to association. (See Pet. Ex. 2). In the interest of determining whether petitioner exhausted his habeas claims in state court, the Court has refrained from relying on the Circuit Court's summarized representation of petitioner's amended claims and has instead articulated what the Court believes are petitioner's amended claims.

6

                  B.  Collateral Estoppel
                  C.  Res Judicata

2.     Petitioner's Constitutional Right to Due Process as afforded him by both Article III, § 10 of the West Virginia Constitution and Amendment XIV of the United States Constitution were violated as well as Petitioner's Constitutional Right to a Fair Trial as afforded him by both Article III, § 14 and Article III, § 10 of the West Virginia Constitution and Amendment VI of the United States Constitution resulting in Petitioner's illegal trial, conviction, sentences and incarceration;

        A.  Improper jury instructions
        B.  Unconstitutional Statutes
        C.  Court lacked jurisdiction
        D.  State withheld exculpatory evidence
        E.  State failed to timely disclose Grand Jury Minutes
        F.  Insufficient evidence
        G.  Prosecutor used false, misleading and perjured testimony which substantially influenced the grand jury in order to obtain the indictment
        H.  Prosecutor used perjured testimony to obtain an illegal conviction against petitioner.
        I.  Court allowed improper testimony in the trial of this matter
        J.  Trial court gave no limiting instructions to jury
        K.  Trial court failed to conduct proper evidentiary hearings
        L.  Trial court gave improper evidentiary rulings
        M.  Prosecuting attorney made improper and prejudicial statements in the trial of this matter.
        N.  Ineffective assistance of counsel: The performance of trial counsel constituted ineffective assistance of counsel, resulting in a violation of Petitioner's Constitutional Right to Effective Assistance of Counsel under Section 14, Article III of the West Virginia Constitutional and the 6th Amendment of the United States Constitution.

3.     Petitioner was denied his Right to Confrontation as guaranteed by Article III, § 14, of the West Virginia Constitution and the 6th Amendment of the United States Constitution resulting in Petitioner's illegal trial, conviction, sentences and incarceration;

4.     Petitioner was denied his Right of Association as guaranteed by the First Amendment of the United States Constitution resulting in Petitioner's illegal trial, conviction, sentences and incarceration.

(Pet. Ex. 1).

By order entered January 13, 2005, the Circuit Court dismissed petitioner's twice-amended grounds for relief, finding that a habeas corpus proceeding is not a substitute for a writ of error and that petitioner was not denied his right to confrontation or association. The Circuit Court set an omnibus hearing for March 21, 2005 for issues 1, 2, and 7 of petitioner's amended petition filed September 25, 2002. The hearing was held on March 21, 2005. On July 6, 2005, the Circuit Court refused petitioner's writ of habeas corpus, finding petitioner had failed to establish a basis for relief. (Resp't Ex. 7).

**4.     Appeal of Denial of Habeas Relief to the West Virginia Supreme Court of Appeals**

On March 9, 2006, petitioner, *pro se*, appealed the Circuit Court's refusal to the WVSCA, assigning the following five errors:

1.     Petitioner's Constitutional protections against Double Jeopardy as afforded him by both Article III, § 5 of the West Virginia Constitution and Amendment V and Amendment XIV of the United States Constitution were violated resulting in Petitioner illegal trial, conviction, sentences and incarceration;
    A.  Multiple Trials
    B.  Collateral Estoppel
    C.  Res Judicata

2.     Petitioner's Constitutional Right to Due Process as afforded him by both Article III, § 10 of the West Virginia Constitution and Amendment XIV of the United States Constitution were violated as well as Petitioner's Constitutional Right to a Fair Trial as afforded him by both Article III, § 14 and Article III, § 10 of the West Virginia Constitution and Amendment VI of the United States Constitution resulting in Petitioner's illegal trial, conviction, sentences and incarceration;
    A.  Improper jury instructions
    B.  Unconstitutional Statutes
    C.  Court lacked jurisdiction
    D.  State withheld exculpatory evidence
    E.  State failed to timely disclose Grand Jury Minutes
    F.  Insufficient evidence
    G.  Prosecutor used false, misleading and perjured testimony which
        substantially influenced the grand jury in order to obtain the indictment

H. Prosecutor used perjured testimony to obtain an illegal conviction against petitioner.
I. Court allowed improper testimony in the trial of this matter
J. Trial court gave no limiting instructions to jury
K. Trial court failed to conduct proper evidentiary hearings
L. Trial court gave improper evidentiary rulings
M. Prosecuting attorney made improper and prejudicial statements in the trial of this matter.
N. Ineffective assistance of counsel: The performance of trial counsel constituted ineffective assistance of counsel, resulting in a violation of Petitioner's Constitutional Right to Effective Assistance of Counsel under Section 14, Article III of the West Virginia Constitutional and the 6th Amendment of the United States Constitution.

3. Petitioner was denied his Right to Confrontation as guaranteed by Article III, § 14, of the West Virginia Constitution and the 6th Amendment of the United States Constitution resulting in Petitioner's illegal trial, conviction, sentences and incarceration;

4. Petitioner was denied his Right of Association as guaranteed by the First Amendment of the United States Constitution resulting in Petitioner's illegal trial, conviction, sentences and incarceration;

5. In all of the above arguments, Petitioner's Right to Due Process was violated and the Circuit Court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court *Williams V. Taylor*, "146 L.ed2d 389".[10]

(See Resp't Ex. 8 and Pet. Ex. 1).

On December 6, 2006, the WVSCA refused petitioner's appeal.[11] (Resp't Ex. 8).

---

[10] Petitioner's habeas petition to the WVSCA included many sub-claims that are too numerous to be listed in their entirety. See Respondent's Exhibit 8 for the complete list of petitioner's habeas claims to the WVSCA.

[11] The Government, on page 5 of its Motion for Summary Judgment (Doc. No. 25), erroneously states the WVSCA refused petitioner's habeas petition on January 10, 2006. As established by the WVSCA's one-page order (see Resp't Ex. 8), the WVSCA refused petitioner's appeal on December 6, 2006. The Government's error is significant because had petitioner's appeal been refused by the WVSCA on January 10, 2006, his § 2254 petition would have been untimely filed.

**B.      FEDERAL HABEAS PETITION PROCEEDINGS**

Petitioner's federal habeas petition raises the following four grounds for relief:

1.      Petitioner's constitutional protections against Double Jeopardy as afforded by both Article III, § of the West Virginia Constitutional and Amendment V and XIV of the United States Constitution were violated, resulting in Petitioner's illegal trial conviction, sentences, incarceration. The lower court's actions have resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States and or resulted in a decision that was based on an unreasonable determination;

2.      Petitioner's Constitutional Right to Due Process as afforded him by both Article III, § 10 of the West Virginia Constitution and Amendment XIV of the United States Constitution and Petitioner's Constitutional Right to a Fair Trial as afforded him by both Article III, § 14 and Article III, § 10 of the West Virginia Constitution and Amendment VI of the United States Constitution which resulted in Petitioner's illegal trial, conviction, sentences, incarceration. The lower court's actions have resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States and or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding;

3.      The performance of Petitioner's trial counsel constituted ineffective assistance of counsel violating Petitioner's Constitutional Right to Effective Assistance under Section 14, Article III of the West Virginia Constitution and the 6th Amendment of the United State's Constitution. Counsel's performance was deficient under an objective standard of reasonableness and there is a reasonable probability that but for counsel's unprofessional errors the result of the proceedings would have been different. Counsel's deficient performance resulted in Petitioner's illegal trial, conviction, sentence, incarceration and were not based on strategic decisions. The lower court's actions and counsel's unprofessional errors have resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States and or resulted in a decisions that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding;

4.      Petitioner was denied his Right to Confrontation as guaranteed by Article III, § 14 of the West Virginia Constitution and the 6th Amendment of the United States Constitution which resulted in Petitioner's illegal trial, conviction, sentences, incarceration. The lower court's actions have resulted in a decision that was contrary to or involved an unreasonable application of

clearly established Federal law as determined by the Supreme Court of the United States and or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## II. STANDARD OF REVIEW

### A. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

### B. SUMMARY JUDGMENT

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla

of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## C.    FEDERAL HABEAS REVIEW UNDER 28 U.S.C. § 2254

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Federal habeas relief does not lie for errors of state law." Thomas v. Taylor, 170 F.3d 466, 470 (4th Cir. 1999); see, also, Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

The "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims - *in federal terms* - to the highest state court prior to presenting them for federal habeas

review.  Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted).  This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Id.  To exhaust a claim in state court, the petitioner must "expressly raise[] that same federal constitutional claim in state court that he raises in federal court."  Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C.  Aug. 1, 2006).  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

Even if a petitioner is found to have exhausted his state remedies, the federal court may not grant habeas relief for claims adjudicated on their merits by the state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion."  Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999).  When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law.  Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001) (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)).  However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal Court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

Habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

# III. ANALYSIS

## A. TIMELINESS OF PETITIONER'S § 2254 MOTION

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2244(d). The limitation period shall run from the latest of:

A) the date on which the judgment of conviction becomes final by the conclusion of direct review of the expiration of the time for seeking such review;

B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Where a federal prisoner does not file a petition for writ of certiorari with the United States Supreme Court, the one year limitation begins to run when the time for filing a writ - 90 days - expires.

In the present case, petitioner was convicted in July 2000 and sentenced August 23, 2000. Petitioner's direct appeal to the West Virginia Supreme Court of Appeals was refused February 21, 2001. Petitioner's second appeal to the WVSCA was refused July 5, 2001. Petitioner's time for filing a writ of certiorari with the Supreme Court expired October 5, 2001. Petitioner's judgment therefore became final on October 5, 2001 and the one-year limitations period began to

run.  The limitations period was tolled approximately 265 days later, on June 27, 2002, when petitioner filed his state habeas petition.  See 28 U.S.C. § 2244(d)(2) [providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."];  Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  The remaining 100 days of the limitations period resumed running on December 6, 2006, when the WVSCA refused petitioner's petition.  Petitioner therefore had until approximately March 16, 2007 to file his § 2254 petition.  Because petitioner filed his § 2254 petition on January 22, 2007, his petition was timely filed.

**B.     EXHAUSTION OF PETITIONER'S CLAIMS**

        As established above, the Court may not grant a petitioner's request for habeas relief unless petitioner exhausted his claims by presenting them to the highest state court.  28 U.S.C. § 2254(b)(1)(A).  A petitioner "exhausts" his claims in state court by presenting all his claims - *in federal terms* - to the state courts prior to presenting them to the Court for federal habeas review.  Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted).  The petitioner must "expressly raise[] that same federal constitutional claim in state court that he raises in federal court."  Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at 31 (W.D.N.C.  Aug. 1, 2006).  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

        The Government contends petitioner's claims are not exhausted because petitioner, by adding the nearly 100 pages of argument to his habeas petition, destroyed any previously-existing similarity between his state habeas claims and his federal habeas claims such that his federal habeas claims are not longer exhausted.  The Government also contends petitioner's claims are not

16

exhausted because petitioner's state habeas claims failed to allege a violation of a federally protected right. Rather, as the Government contends, citing to <u>Wilder v. Cockrell</u>, 274 F.3d 255, 260 (5th Cir. 2001), petitioner merely made "fleeting reference[s] to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument."

Petitioner contends he sufficiently raised his claims in state court and that the Government failed to consider all the relevant pleadings from state court when considering whether petitioner exhausted his claims.

Petitioner's first direct appeal referenced the "Federal Constitution," the 6th Amendment, and cited to a 4th Circuit case, but otherwise failed to develop any claims of federal constitution violations. (See Resp't Ex. 8). Petitioner's second direct appeal altogether failed to reference any federal constitutional right or develop any federal claim. (Resp't Ex. 4).

Petitioner's original habeas petition and his amended habeas petition dated September 25, 2002 failed to explicitly invoke any federal constitutional right. The Circuit Court nevertheless construed amended claim 1 as an ineffective assistance of counsel claim invoking the 6th Amendment, and amended claim 2 as an allegation of suppression of evidence in violation of his due process rights. The Court dismissed amended claims 3, 6, and 12 -20 because it found petitioner had failed to state a constitutional claim, and dismissed amended claims 4, 5, 8, 9, 10, and 11 because it found petitioner was not entitled to relief, or that the claims had been previously and finally adjudicated or waived. After an omnibus hearing and consideration of amended claims 1, 2, and 7, the Court denied relief. Notably, the Circuit Court did not mention petitioner's amended habeas petition filed August 23, 2004 - in which petitioner developed his federal constitutional right against double jeopardy, to due process, to effective assistance of counsel, to confrontation, and to association - other than to note his right to confrontation or association had

not been violated. Petitioner's appeal to the WVSCA of the Circuit Court's denial of his habeas petition again asserted his federal constitutional right against double jeopardy, to due process, to effective assistance of counsel, to confrontation, and to association.

While the Court agrees with Respondent that petitioner's references to his federal constitutional rights were for the most part "fleeting" such that the state courts were not given a substantial "'opportunity to pass upon and correct' alleged violations of prisoners' federal rights," Duncan, 513 U.S. at 365 (1995), quoting Picard, 404 U.S. at 275, the Court simultaneously finds that petitioner made efforts to develop his current federal claims before the state courts such that he cannot be said to have failed to exhaust his claims. For example, petitioner alleged the same claims in his amended *pro se* habeas petition to the Circuit Court as he did to in his habeas appeal to the WVSCA. The Circuit Court, although evidencing its receipt of petitioner's amended *pro se* habeas petition, failed to discuss any of the twice-amended claims aside from petitioner's alleged violations of confrontation and association. The Court therefore declines to find that petitioner has failed to exhaust his claims and instead reviews the merits of petitioner's claims.            **C. GROUND ONE - Whether Petitioner's Constitutional Protections Against Double Jeopardy Were Violated, Resulting in Petitioner's Illegal Trial Conviction, Sentences, and Incarceration.**

Petitioner alleges his "constitutional protections against Double Jeopardy as afforded by both Article III, § 5 of the West Virginia Constitution and Amendment V and XIV of the United States Constitution were violated, resulting in Petitioner's illegal trial, conviction, sentences, incarceration." (Pet. Mot. at 16). Specifically, petitioner alleges his felony conviction constituted double jeopardy because jeopardy first attached at the state's abuse and neglect proceedings held pursuant to West Virginia Code § 49-6-6. Petitioner also alleges his felony conviction violated the principles of collateral estoppel (issue preclusion) and res judicata (claim preclusion) because the

state previously litigated and a final judgment was entered on the issue of whether petitioner digitally fondled the victim. Respondent alleges petitioner's conviction did not constitute double jeopardy because jeopardy did not attach at the abuse and neglect proceeding. It further alleges there is no merit to petitioner's invocation of the principles of collateral estoppel or res judicata.

To the extent petitioner alleges a violation of the West Virginia Constitution, the Court is barred from reviewing the issue because "[f]ederal habeas relief does not lie for errors of state law." See Thomas, 170 F.3d at 470. The Court considers only petitioner's alleged violations of the United States Constitution.

     1.     <u>Double Jeopardy</u>

The Court finds petitioner's double jeopardy argument is without merit. As petitioner accurately explains, the West Virginia Department of Health and Human Resources (DHHR) filed a petition on May 19, 1999, pursuant to West Virginia Code § 49-6-6, alleging that the victim and her brother were abused or neglected children. (Resp't Ex. 8 at 14). Petitioner was named as a respondent in the action. While the abuse and neglect case was pending, the State of West Virginia filed a criminal indictment against petitioner, charging him with felony sexual assault in the first degree, and felony sexual assault of a child by a custodian. (<u>Id.</u> at 15). Concurrently, petitioner was removed as a named respondent in the abuse and neglect case because it was determined he was not the biological father of either child. The abuse and neglect case proceeded and the court, after finding petitioner had digitally penetrated the victim, adjudicated the victim and her brother as abused or neglected children. (<u>Id.</u> at 16). After the abuse and neglect case was completed, petitioner was tried on the criminal charges and convicted.

Contrary to petitioner's assertion, jeopardy did not attach at the abuse and neglect proceeding. While the abuse and neglect proceeding addressed the issue of whether petitioner had

digitally penetrated the victim, the proceeding's overall purpose was to assess whether the children should be adjudicated as abused or neglected children. Unlike petitioner's criminal case, the abuse and neglect proceeding was not aimed at punishing petitioner. See In Re Amber Leigh J., 606 S.E.2d 372 (W. Va. 2004). Because the double jeopardy clause's protection against multiple punishments is implicated only by a sovereign's attempts to punish a defendant twice for the same offense, petitioner's abuse and neglect proceedings did not constitute "jeopardy" for the purposes of triggering the double jeopardy clause. See United States v. One Assortment of 89 Firearms, 465 U.S. 354, 359-360 (1984), see, also, United States v. Harper, 490 U.S. 435, 448-49 (1989) [civil proceedings that are intended to be remedial, as opposed to punitive, do not implicate the double jeopardy clause]. The Court finds support for its conclusion in Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides "[u]nder no circumstances shall a civil protection proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." Petitioner's double jeopardy claim is therefore without merit.

2.      Collateral Estoppel (Issue Preclusion)

Under the principle of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). The five elements relevant to a collateral estoppel claim, as identified by the Fourth Circuit, are:

1) whether the issue in question is identical to the issue adjudicated in a prior proceeding;

2) whether the issue was actually determined in the prior adjudication;

3) whether the issue was necessarily decided in that proceeding;

4) whether the resulting judgment settling the issue was final and valid; and

5) whether the parties had a full and fair opportunity to litigate the issue in the prior proceeding.

United States v. Fiel, 35 F.3d 997, 1006 (4th Cir. 1994).

The Court finds petitioner's invocation of the doctrine of collateral estoppel is without merit. In the abuse and neglect proceeding, the issue before the court was whether the victim and her brother were "abused and neglected children." In petitioner's criminal action, the issue before the jury was whether petitioner has committed the alleged acts of sexual assault and abuse against the victim. While the issue of whether petitioner had digitally fondled the victim was relevant in both cases, the primary issue in each case was not the same. Additionally, the parties to each of the actions were not the same: the abuse and neglect proceeding was brought by DHHR and the criminal case was brought by the State of West Virginia. In finding petitioner's claim is without merit, the Court, again, relies on Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings which provides, "[u]nder no circumstances shall a civil protection proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings."

3.    Res Judicata (Claim Preclusion)

Under the principle of res judicata, "a judgment on the merits in a prior suit bars a second suit involving the same parties of their privies based on the same cause of action." Parklane Hoisery Co. V. Shore, 439 U.S. 322, 327 n. 5 (1979).

Petitioner's argument is without merit because as explained above, the parties to each action were not the same. Additionally, the actions were not based on the same cause of action: whereas the abuse and neglect case's cause of action was concern for the welfare of the children, the criminal case's cause of action was petitioner's criminal conduct. Finally, Rule 5 of the West

Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides, "[u]nder no circumstances shall a civil protection proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings."

**D.** **GROUND TWO - Whether Petitioner's Constitutional Right to Due Process and a Fair Trial Were Violated, Resulting in Petitioner's Illegal Trial, Conviction, Sentences, and Incarceration.**

Petitioner claims his "constitutional rights to due process as afforded him by both Article III, § 10 of the West Virginia Constitution and Amendment XIV of the United States Constitution and [his] constitutional right to a fair trial as afforded him by both Article III, § 14 and Article III, § 10 of the West Virginia Constitution and Amendment VI of the United States Constitution" were violated in eleven different ways, resulting in petitioner's illegal trial, conviction, sentences, and incarceration. (Pet. Mot. at 23). The Government contends petitioner's claims are without merit and insufficiently pled.

To the extent petitioner's claims allege a violation of the West Virginia Constitution or challenge the state courts' interpretation of state law, the Court is barred from reviewing the issues because "[f]ederal habeas relief does not lie for errors of state law." See Thomas, 170 F.3d at 470.

The Court analyzes each of petitioner's alleged violations of the United States Constitution in turn:

a.    Jury Instructions

Petitioner contends the jury instructions presented to the jury were conflicting and resulted in the elements of the offense not being proved beyond a reasonable doubt. Respondent contends petitioner's claim is without merit.

The Court cannot evaluate the merits of petitioner's claim because petitioner has failed to identify what particular jury instruction he believes violated his federal constitutional rights. Even were petitioner to have identified a particular jury instruction, the record fails to reference any jury instruction that "by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). Accordingly, relief is denied.

b. Unconstitutional Statutes

Petitioner claims the jury instructions presented to the jury were conflicting and resulted in the elements of the offense not being proved beyond a reasonable doubt. Respondent contends petitioner's claim fails as a matter of law because petitioner offers no factual or legal support for his claim.

The Court agrees with Respondent and finds petitioner's claim fails because petitioner has failed to identify what statute he believes violated his constitutional rights or constituted an "unconstitutional statute."

c. Court lacked jurisdiction

Petitioner contends the court lacked jurisdiction due to I) "former jeopardy" and ii) an allegedly void indictment.

i. *Former Jeopardy*

Petitioner contends the Circuit Court of Monongalia County lacked jurisdiction because it previously determined in the abuse and neglect proceeding that petitioner digitally penetrated the victim such that its retrying of petitioner in the criminal case constituted double jeopardy. Respondent contends petitioner's argument is without merit because, as established under Ground One, jeopardy did not attach at the abuse and neglect proceeding.

23

The Court agrees with Respondent and finds, as explained in Ground One, the abuse and neglect proceedings did not render petitioner's criminal trial a violation of double jeopardy because jeopardy did not attach at the civil proceedings. Petitioner's claim is therefore without merit.

ii.    *Void Indictment*

Petitioner contends the Circuit Court of Monongalia County lacked jurisdiction because Trooper Johnson's false, misleading, and perjured testimony to the grand jury rendered the indictment void. Respondent contends petitioner's argument is without merit because Trooper Johnson's testimony was not misleading and because there is no evidence that warrants dismissal of the indictment.

Petitioner's claim centers around the following testimony of Trooper Johnson given before the grand jury on September 10, 1999:

> "She gave - that's the thing about the statements that Autumn has given. I myself have interviewed her twice. She was interviewed at the doctor's office and she talked to Steven Byrd who is the guidance counselor at her school, and during all her testimony or interviews she always gave the same story. She didn't vary from anything and that's unusual - if a child is making a story up they are going to embellish it as they go or change this or that, but Autumn she told the same story to everyone she talked to."

(Resp't Ex. 12 at 29). Petitioner alleges Trooper Johnson was aware of the victim's inconsistent statements to others such that his above testimony misled the jury and voided the indictment.

The Court agrees with Respondent and finds petitioner's claim does not warrant relief. First, there is no evidence Trooper Johnson's testimony was misleading because although the victim's account of where the abuse took place - in the bed, on the futon, or chair - varied between interviews, her overall account of when and where on her body she was touched remained consistent throughout her interviews. Even were there merit to petitioner's claim that Trooper

Johnson provided misleading testimony to the grand jury, such error does not warrant relief because "the petit jury's verdict render[s] harmless any conceivable error in the charging decision that might have flowed from the violation." United States v. Mechanik, 475 U.S. 66, 73 (1986).

        d.       State withheld exculpatory evidence.

            i.       *State failed to disclose second statement given to Trooper Johnson by victim.*

Petitioner contends the state withheld exculpatory evidence because it failed to disclose the contents of Trooper Johnson's second interview with the victim. At the trial, Trooper Johnson testified he conducted a follow-up interview with the victim on a day she appeared in court for the abuse and neglect case, and that the victim told him the abuse occurred prior to spring break from school. (Resp't Ex. 9 at 245). Trooper Johnson testified that he made no notes of the interview and did not record it. (Id. at 246). When these facts were revealed at trial, petitioner objected to further testimony about the second interview on the basis he had never been told about the second interview. The trial court sustained defendant's objection, stating, "if [the victim] gave a statement and the State intended to use it, I think there's a requirement to disclose it." (Id. at 247). The Court then prohibited Trooper Johnson from testifying about the contents of his second interview with the victim. Petitioner now contends he was denied his right to due process and a fair trial because he was not notified about the occurrence or contents of Trooper Johnson's second interview with the victim. Respondent argues petitioner's claim does not warrant relief because petitioner is unable to identify what portions of the interview were exculpatory and how he was prejudiced by the State's alleged failure to disclose the interview.

To the extent petitioner's claims challenge the state court's interpretation of the evidentiary laws of West Virginia, the Court is barred from reviewing the claim because "[f]ederal habeas relief does not lie for errors of state law." See Thomas, 170 F.3d at 470.

To the extent petitioner's claim alleges a violation of his Constitutional Due Process Rights, his claim is without merit. Under Brady v. Maryland, 373 U.S. 83, 87 (1963), a state violates a defendant's constitutional due process rights when it fails to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Petitioner has failed to demonstrate the contents of Trooper Johnson's second interview with the victim constituted exculpatory evidence or was material to petitioner's guilt or punishment. For these reasons, petitioner's claim fails. Id.

    ii.    *State failed to properly preserve potentially exculpatory evidence.*

Petitioner claims his constitutional right to due process and a fair trial were violated because the state failed to preserve or make any record of the victim's statements to Trooper Johnson. Specifically, petitioner claims the state's failure to record the victim's statements denied him the ability to properly impeach the victim. Respondent contends petitioner's claim is without merit because petitioner has failed to demonstrate how the contents of the victim's second statement to Trooper Johnson was exculpatory and material to the outcome of the case.

The Court finds petitioner's argument is without merit because although Trooper Johnson failed to record either of his interviews with the victim, there is no evidence Trooper Johnson's omission was the result of bad faith. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988) [holding state's failure to preserve potentially useful evidence does not amount to a constitutional violation "unless a criminal defendant can show bad faith on the part of the police"].

see, also, United States v. Garcia, 2008 U.S. LEXIS 6210 at *9 (4th Cir. Mar. 26, 2008).
Furthermore, as established above, petitioner has failed to demonstrate how the contents of the
victim's second interview were material to his case. Accordingly, petitioner's claim fails.

      iii.    *State failed to disclose Doctor's report*

      Petitioner claims his constitutional rights were violated by the state's failure to
disclose any doctor's report concerning the victim's medical examination. While petitioner
concedes the state disclosed reports of Catherine Rosinski, a nurse practitioner, petitioner alleges
the state failed to disclose any evaluation from a licensed medical doctor. Petitioner also alleges
the state erred by failing to disclose copies of photographs taken by Ms. Rosinski during the
victim's medical examination, because had he been provided with the photographs he could have
obtained his own expert or medical professional to interpret them. Respondent argues petitioner
procedurally defaulted his claim by failing to raise it in state court. Respondent also argues
petitioner's claim is without merit because there is no evidence the state failed to disclose any
medical reports.

      The Court finds petitioner's argument is without merit because there is no evidence
the state withheld medical reports from petitioner. Furthermore, petitioner has failed to provide
any authority for his proposition the state had a duty to have the victim evaluated by a licensed
doctor. Finally, there is no evidence the photographs taken by Ms. Rosinski were exculpatory or
in any way material to petitioner's defense such that the state was obligated under Brady, 373 U.S.
at 87, to disclose them. To the contrary, as testified to by Ms. Rosinski, the photos were "all
blurry . . . [and] were not helpful at all" due to difficulties with the camera during the examination.
(Resp't Ex. 9 at 387). Accordingly, petitioner's argument fails.

iv.   *State failed to disclose treating psychologists' report and/or video taped interviews.*

Petitioner alleges his constitutional rights were violated by the state's failure to disclose any reports from the treating psychologist, Sharon McMillen, because the reports were potentially exculpatory.  Respondent contends petitioner's claim fails because petitioner has failed to establish the reports were in the state's possession, or were exculpatory.

The Court finds petitioner's claim is without merit because, as argued by Respondent, petitioner has failed to demonstrate the reports from Sharon McMillen were in the state's possession, were exculpatory, or were material such that the state had a duty to disclose them.  Brady, 373 U.S. at 87.

v.   *State's failure to provide recordings or transcripts of most of the victim's interviews.*

Petitioner claims his constitutional rights were violated by the state's repeated failure to disclose any recordings, transcripts, or signed statements from the victim's various interviews.  Petitioner alleges the state's failure to disclose such items denied him the ability to effectively impeach the victim or identify any improper interviewing techniques.  Respondent contends petitioner's claim is not supported by the record.

The Court finds petitioner's claim is without merit because petitioner has failed to identify the state withheld recordings, transcripts, or signed statements from the victim.

e.   State failed to timely disclose Grand Jury Minutes

Petitioner argues the state violated his constitutional rights by failing to timely disclose the Grand Jury Minutes.  In so arguing, petitioner relies on the Circuit Court docket which reveals that on May 5, 2000, the Circuit Court ordered that if the case did not settle within ten working days, the court reporter must transcribe the grand jury transcript and file the original with the clerk and

copies to parties. No additional entry is on the docket of the grand jury transcripts until October 3, 2001 - nearly 16 months after petitioner's conviction - when the docket states "Grand Jury Proceedings of 9/10/99 filed." (Doc. No. 13, Ex. A). Respondent contends petitioner's claim is without merit because trial counsel testified at the state habeas hearing that the state disclosed the grand jury minutes prior to trial.

The Court finds petitioner's claim is without merit because although petitioner was entitled to the grand jury transcripts, see United States v. Donohue, 574 F. Supp. 1263 (D. Md. 1093), and although the Circuit Court docket suggests the transcripts were not delivered until after the trial, trial counsel testified at the habeas hearing he received the grand jury transcripts "shortly before trial." (Resp't Ex. 10 at 23). Petitioner's argument therefore fails.

      f.    <u>Insufficient evidence</u>

Petitioner alleges there was insufficient evidence to sustain the jury's verdict because 1) his conviction was obtained by "less than a reasonable doubt standard," 2) the state failed to prove the victim was eleven years old or less and that a crime occurred, and 3) the victim's testimony was inherently incredible. Respondent argues petitioner's claim is without merit because there was sufficient evidence of petitioner's guilt; the prosecution proved the victim was eleven years old or less; and it is within the sole province of the jury to evaluate a witness' credibility.

The Court agrees with Respondent and finds petitioner's argument is without merit. While claims regarding the sufficiency of evidence are cognizable in a federal habeas petition, <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the petitioner bears the burden of demonstrating that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319. In reviewing the evidence, the Court must defer to the jury's determination of a witness' credibility and

presume that the jury resolved any conflicts in the evidence in favor of the prosecution. <u>See</u> <u>Wright v. West</u>, 505 U.S. 277, 296 (1992). The Court has reviewed the evidence in the light most favorable to the prosecution and determined petitioner has failed to demonstrate no rational jury could have found him guilty of the offenses charged. <u>See</u> <u>Jackson</u>, 443 U.S. at 319. To the contrary, there existed substantial testimony from the victim and corroborating testimony from Trooper Johnson, social workers, and medical professionals that petitioner abused the victim. Although there were inconsistencies in the victim's statements as to where and how the abuse occurred, it was within the province of the jury, not the Court, to evaluate the credibility of witnesses. <u>See</u> <u>Wright</u>, 505 U.S. at 296. Ultimately, the jury was permitted to rely on the testimony of the victim, alone, in finding petitioner guilty. <u>See</u> <u>United States v. Wilson</u>, 115 F.3d 1185, 1190 (4th Cir. 1997)

Additionally, the state sufficiently proved that the victim was "eleven years old or less" at the time of the offense.[2] The victim testified she was eleven years old when the abuse occurred. While petitioner would like the Court to believe that a victim who passes her eleventh birthday is "over the age of eleven years," the Supreme Court of Appeals of West Virginia has explicitly stated that § 61-8B-3 includes those victims who have not yet celebrated their twelfth birthday at the time of the abuse. <u>State ex rel Morgan v. Trent</u>, 465 S.E.2d 257, 265 (W. Va. 1995).

      g, h.    <u>Prosecutor used false, misleading and perjured testimony which substantially influenced the grand jury in order to obtain the indictment</u>.

Petitioner claims the state prosecutor knowingly used misleading and perjured testimony to substantially influence the grand jury and petite jury. Specifically, petitioner claims the state was

---

[2] Pursuant to West Virginia Code § 61-8B-3, an individual is guilty of first degree sexual assault when "[s]uch person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less."

aware of Trooper Johnson's perjured testimony that the victim "always gave the same story" to the various interviewers. Petitioner claims the state was also aware of Catherine Rosinski's perjured testimony at the felony trial that the victim's painful urination was the result of scratches (as opposed to bacteria, which petitioner alleges Ms. Rosinski testified to at the abuse and neglect proceedings). (See Resp't Ex. 9 at 383). Respondent contends petitioner's argument is without merit because petitioner has failed to show the witnesses committed perjury, and that any perjury that did occur warrants relief.

The Court agrees with Respondent and finds petitioner's claims are without merit. First, perjury is committed by a witness who, testifying under oath or affirmation, "gives false testimony concerning a material matter with the wilful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). While there appeared to be inconsistencies in the victim's statements made to various interviewers, there is no evidence Trooper Johnson willfully intended to provide false testimony about or misrepresent the consistency of the victim's statements. Similarly, there is no evidence Ms. Rosinski wilfully intended to provide false testimony concerning the cause of the victim's painful urination. Rather, the record establishes Ms. Rosinski was careful to explain to the jury that the victim's painful urination could also be caused by poor hygiene or bubble baths. (Resp't Ex. 9 at 382, 386).

Even were petitioner able to establish the two witnesses committed perjury, relief is not warranted because petitioner has failed to demonstrate the false testimony "in any reasonable likelihood . . . [] affected the judgment of the jury." Giglio v. United States, 405 U.S. 150, 154 (1972). Rather, regarding any perjured testimony by Trooper Johnson, "the petit jury's verdict render[s] harmless any conceivable error in the charging decision that might have flowed from the

violation." <u>United States v. Mechanik</u>, 475 U.S. 66, 73 (1986). Similarly, any perjured testimony by Ms. Rosinski as to the cause of the victim's painful urination was likely immaterial to the outcome of petitioner's case because Ms. Rosinski clarified that the victim's condition could have other causes, and that the victim did not exhibit any other signs of physical or sexual abuse. (Resp't Ex. 9 at 382, 386).

      i.    <u>Court allowed improper testimony to go unchecked by failing to conduct required hearing</u>.

Petitioner claims his constitutional rights were violated by the trial court's failure to conduct evidentiary hearings on the following matters: 1) the admission of the victim's hearsay statements; 2) the introduction of testimony that the victim was believable; 3) the introduction of lay opinions that the victim had been sexually abused; 4) the introduction of "imaginary evidence" by Catherine Rosinski concerning the victim's signs of sexual abuse; 5) the state's inability to produce any signed, recorded, or transcribed statements from the victim; and 6) the introduction of testimony concerning conclusions of law, namely whether the victim had been abused. Respondent contends petitioner has failed to state any basis for relief.

The Court agrees with Respondent and finds petitioner's claims do not warrant relief. Under 28 U.S.C. § 2252(d), cognizable claims are limited to those alleging violations of federal, as opposed to state, constitutional rights. Challenges to the admission of evidence do not present a cognizable federal due process claim, <u>see</u> <u>Gaskins v. McKellar</u>, 916 F.2d 941, 949 (4th Cir. 1990), unless the of evidence "offends some principle of justice so rooted in the traditional and conscience of our people as to be ranked as fundamental." <u>Patterson v. New York</u>, 432 U.S. 197, 202 (1997). Petitioner has failed to show how the trial court's failure to conduct the above-mentioned evidentiary hearings violated his due process rights, because there is no evidence any

hearing on the above matters would have altered the admission of evidence, or that the evidence admitted in the absence of the hearings was prejudicial. See Pierson v. O'Leary, 959 F.2d 1385 (7th Cir. 1992) [holding the improper admission of evidence renders a trial fundamentally unfair if its prejudicial effect outweighs its probative value "such that its admission likely changed the outcome of the trial"].

> j.     Trial court gave no limiting instructions to jury.

Petitioner contends his constitutional rights were violated by the trial court's failure to instruct the jury they may not consider the victim's hearsay statements as substantive evidence of petitioner's guilt. Respondent contends petitioner's claim is without merit because petitioner has failed to demonstrate the trial court's omission constituted a denial of a fundamentally fair trial.

The Court finds petitioner's claim is without merit. Challenges to a state court's jury instructions do not state a cognizable federal due process claim unless the court's omission of a specific jury instruction "offends some principle of justice so rooted in the traditional and conscience of our people as to be ranked as fundamental." Patterson, 432 U.S. at 202; see also, Nickerson v. Lee, 971 F.2d 1125, 1138 (4th Cir. 1992) [holding "[f]ailure to give an . . . instruction, without more, is not a violation of the Due Process Clause. Some other circumstances, demonstrating a serious miscarriage of justice, must be present."]. Petitioner has failed to demonstrate the court's failure to provide a limiting instruction to the jury on their consideration of the victim's hearsay statements constituted a "serious miscarriage of justice" or prejudiced petitioner. Id. Rather, the victim's hearsay statements to Ms. Rosinski and Ms. Beeler fell within a hearsay exception such that they could be considered by the jury for the truth of the matter asserted. See Fed. R. Evid. 803. Similarly, the victim's hearsay statements to Trooper Johnson were properly presented as substantive evidence by virtue of the victim being present in court and

33

available for cross-examination.  See Fed. R. Evid. 801.  Petitioner's claim is therefore without

merit.

> k.      Trial court failed to conduct a proper Rule 702 evidentiary hearing.

Petitioner argues his constitutional rights were violated by the trial court's failure to

conduct a hearing pursuant to Federal Rule of Evidence 702[3] to determine the admissibility of Ms.

Rosinski's and Ms. Beeler's scientific testimony.  At the trial, Ms. Rosinski testified she examined

the victim and although the victim had a "normal" physical exam, the victim's painful urination

and prior medical records were consistent with her statements of having been digitally fondled.

(Resp't Ex. 9 at 387).  Also at the trial, Ms. Beeler testified that the victim suffered from post-

traumatic stress disorder and reported information consistent with having a history of repeated

sexual abuse over a six to seven month period.  (Id. at 425).  Petitioner claims neither Ms.

Rosinski's or Beeler's testimony satisfied the requirements of Rule 702 because neither's opinion

was based on scientific methodology and reasoning.  Respondent did not specifically address this

issue.

Petitioner's claim is without merit.  As established above, challenges to the admission of

evidence do not state a cognizable federal due process claim unless the admission "offends some

principle of justice so rooted in the traditional and conscience of our people as to be ranked as

fundamental."  Patterson, 432 U.S. at 202.  There is no evidence the introduction of the testimony

---

[3] Rule 702 of the Federal Rules of Evidence, titled "Testimony by Experts,"
provides, "If scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness qualified as an
expert by knowledge, skill, experience, training, or education, may testify thereto in the
form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or
data, (2) the testimony is the product of reliable principles and methods, and (3) the
witness has applied the principles and methods reliably to the facts of the case."

from Ms. Rosinski or Ms. Beeler so offended the principles of justice so as to violate petitioner's

due process rights. Rather, their testimony about conversations with the victim was properly

admitted pursuant to Rule 803(4) of the West Virginia Rules of Evidence[4] (as the victim's treating

sources), and their qualifications to offer medical opinions on whether the victim had been abused

was properly established by the state. (See Resp't Ex. 9 at 376-77, 402). Accordingly,

petitioner's claim is without merit.

l.       Trial court gave no or improper evidentiary rulings.

Petitioner claims he was deprived of his constitutional rights by the state's introduction of

testimony concerning the victim's mother. Specifically, petitioner alleges he was prejudiced by

testimony the victim's mother was previously investigated by DHHR for allegations of physical

abuse and neglect. Respondent did not specifically address this issue.

Again, challenges to the admission of evidence do not state a cognizable federal due

process claim unless the admission "offends some principle of justice so rooted in the traditional

and conscience of our people as to be ranked as fundamental." Patterson, 432 U.S. at 202.

Petitioner has failed to demonstrate how the testimony concerning the victim's mother's prior

contacts with DHHR so prejudiced his case as to violate his due process rights. Accordingly,

petitioner's claim is without merit.

---

[4] Rule 803 of the West Virginia Rules of Evidence constitutes an exception to exclusion of hearsay and provides, "4) Statements for Purposes of Medical Diagnosis of Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

**E.      GROUND THREE - Whether the Petitioner's Constitutional Right to Effective Assistance of Counsel was Violated, Resulting in Petitioner's Illegal Trial, Conviction, Sentence, and Incarceration.**

Petitioner alleges his trial counsel denied him the "constitutional right to effective assistance under Section 14, Article III of the West Virginia Constitution and the 6th Amendment of the United States Constitution."  Petitioner further alleges his counsel's performance was deficient under an objective standard of reasonableness and there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. Respondent contends petitioner's allegations are without merit.

To the extent petitioner alleges a violation of the West Virginia Constitution, the Court is barred from reviewing the issue because "[f]ederal habeas relief does not lie for errors of state law."  See Thomas, 170 F.3d at 470.  To the extent petitioner alleges a violation of his 6th Amendment right to effective assistance of counsel, the standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Pursuant to Strickland, a petitioner must first demonstrate his counsel's conduct fell below an objective standard of reasonableness.  Id. at 687-91.  Petitioner must next show "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  Id. at 694.  In reviewing counsel's conduct, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Id. at 689.  Furthermore, petitioner bears the burden of demonstrating prejudice. Hutchins v. Garrison, 724 F.2d 1425 (4th Cir. 1983).

a.      Counsel failed to perform any investigations.

Petitioner alleges his counsel denied him effective assistance of counsel by failing to conduct a reasonable and adequate investigation.  Petitioner specifically challenges his counsel's

alleged failure to investigate the issue of Judge Clawges' recusal, the admissibility of expert testimony from Ms. Rosinski and Ms. Beeler, whether a 702 hearing was needed, and Ms. Rosinski's inconsistent testimony on the causes of the victim's painful urination.

The Court finds petitioner's allegations are without merit. Regarding counsel's alleged failure to investigate Judge Clawge's recusal, the record establishes counsel filed a motion for recusal of the trial judge and that the WVSCA reviewed the motion and directed the Circuit Court to proceed. Furthermore, as explained by the Circuit Court when reviewing petitioner's habeas petition, (see Resp't Ex. 7 at 9), Canon 3.E of the Model Code of Judicial Conduct reveals that the fact a judge presided over a prior proceeding involving the same defendant or factual situation does not, alone, provide a basis upon which the judge should recuse himself.

Regarding counsel's alleged failure to investigate the propriety of Ms. Rosinski's and Ms. Beeler's expert testimony, petitioner's argument is without merit because the record establishes defense counsel objected to the scope of Ms. Beeler's testimony, requesting she not be able to offer an opinion on whether petitioner, specifically, had abused the victim. Furthermore, because Ms. Rosinski's and Ms. Beeler's expert testimonies were properly admitted pursuant to Rule 803(4) of the West Virginia Rules of Evidence, (see Resp't Ex. 9 at 376-77, 402), counsel's request for a 702 hearing or further objection to the experts' testimony would have been futile.

Regarding counsel's alleged failure to investigate the prior inconsistent testimony of Ms. Rosinski's (given at the abuse and neglect proceeding) about the cause of the victim's painful urination, petitioner's argument is without merit. At trial, Ms. Rosinski testified there were multiple causes of painful urination, including nail scratches, poor hygiene, and bubble baths. (Resp't Ex. 9 at 386). Therefore, counsel's failure to impeach Ms. Rosinski with her testimony from the abuse and neglect proceedings - wherein petitioner alleges Ms. Rosinski concluded the

37

victim's painful urination was caused by bacteria - did not alter the impact of Ms. Rosinski's testimony on petitioner's trial.

      b.      <u>Counsel failed to object to hearsay testimony</u>.

Petitioner alleges his counsel was ineffective because counsel failed to object to the introduction of hearsay statements made by the victim and testified to by Trooper Johnson, Ms. Beeler, and Ms. Rosinski. Respondent contends petitioner's argument is without merit because the statements were properly admitted, and any failure on counsel's part to object to the admission of the statements constituted objectively reasonable trial strategy.

The Court agrees with Respondent. The victim's hearsay statements made to Ms. Rosinski and Ms. Beeler were properly admitted pursuant to Rule 803 of the West Virginia Rules of Evidence as "Statements for Purposes of Medical Diagnosis or Treatment." Furthermore, the victim's hearsay statements made to Trooper Johnson were properly admitted by virtue of the victim testifying at trial and being available for cross-examination. <u>See</u> Fed. R. Evid. 801; <u>see also</u> <u>California v. Green</u>, 399 U.S. 149, 151 (1970) [holding "the confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination"]. Counsel therefore had no valid basis upon which to object to the admission of the hearsay statements. Even if there were a valid basis upon which counsel could have objected, counsel's "failure to object to inadmissible or objectionable material for tactical reasons can constitute objectively reasonable trial strategy under <u>Strickland</u>," <u>Humphries v. Ozmint</u>, 397 F.3d 206, 234 (4th Cir. 2005), which is "virtually unchallengable." <u>Strickland</u>, 466 U.S. at 690-91.

c.      Counsel failed to request limiting instructions.

Petitioner contends his counsel was ineffective for failing to request a limiting instructions concerning the jury's consideration of the victim's inconsistent hearsay statements. Respondent contends petitioner's claim is without merit because the hearsay statements were properly admitted and the court gave its standard instruction concerning witnesses' credibility.

The court agrees with Respondent. First, the court instructed the jury that "a conviction of any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible. The credibility of the testimony is a question for the jury." (See Resp't Ex. 7 at 11). The jury was therefore apprised of their duty to evaluate the victim's credibility in light of all the evidence, including the victim's inconsistent hearsay statements, such that counsel had no duty to request additional limiting instructions. Second, the decision to request or not request a jury instruction is a matter of counsel's trial strategy and therefore "virtually unchallengeable." Strickland, 466 U.S. at 690-91; see also, Albrecht v. Horn, 471 F.3d 435, 456 (3rd Cir. 2006).

d.      Counsel failed to obtain any experts.

Petitioner alleges his counsel was ineffective because counsel failed to call any experts or investigate how the use of experts could 1) identify a reason for the victim's inconsistent statements, or 2) dispute the opinions of the medical and psychological experts, including Ms. Beeler's opinion that the victim suffered from PTSD and that her signs and symptoms were consistent with having been sexually abused over a six or seven month period. Respondent contends petitioner's claim is without merit because any experts called by the defense would have confirmed, as opposed to refuted, the state's experts' testimony.

The Court agrees with Respondent and finds petitioner's claim lacks merit. First and foremost, there is no evidence in the record that a medical or psychological expert called by the defense would have rendered such a substantially different opinion from Ms. Rosinski or Ms. Beeler so as to change the outcome of petitioner's case. Rather, a medical expert would have likely confirmed Ms. Rosinski's testimony that there are multiple causes of painful urination in a child, ranging from digital fondling to bubble baths. Similarly, a psychological expert would have likely agreed with Ms. Beeler that the victim manifested symptoms of physical, emotional, and sexual abuse, suffered from PTSD, and required treatment. Finally, the decision whether to call an expert was a strategic choice of counsel and therefore "virtually unchallengeable." Strickland, 466 U.S. at 690-91; (Resp't Ex. 10 at 19).

 e. Counsel failed to object to Ms. King's testimony.

Petitioner alleges his counsel was ineffective for failing to object to Ms. King's - the DHHR caseworker's - testimony about the victim's mother's history with DHHR, because such history was not relevant and highly prejudicial to petitioner. Respondent contends petitioner's claim is without merit because the jury was given a limiting instruction on that aspect of Ms. King's testimony.

The Court agrees with Respondent and finds petitioner's claim is without merit. During the trial, Ms. King alluded to prior contacts between DHHR and the victim, the victim's brother, and the victim's mother. (Resp't Ex. 9 at 125). At defense counsel's request, the Court instructed the jury that "what led to that [prior] referral is not relevant to this proceeding, and, accordingly, there will be no testimony with respect to the specifics or the referral or what led to the referral for the basic reason that it really has nothing to do with the case that you're hearing today." (Id. at 126). The Court further instructed the jury members they were not to "wonder or speculate or

think about what that might have been." (Id.).   During cross-examination of Ms. King, defense counsel elicited testimony about the specifics of DHHR's prior contacts with the victim and her family.  (Id. at 159-161).  On redirect examination, the state elicited even more testimony about DHHR's prior contacts with the victim and her family.  (Id. at 75-178).   While defense counsel did not object to the state's questions, defense counsel's omission was not erroneous because counsel had "opened the door" for the state's questions by virtue of his own questions to Ms. King.  See United States v. Catano, 65 F.3d 219, 226 (1st Cir. 1995).  Furthermore, counsel's failure to object was a matter of trial strategy and therefore "virtually unchallengeable." Strickland, 466 U.S. at 690-91.  As counsel explained at the habeas hearing, he did not object to Ms. King's testimony because if the evidence of the victim's prior allegations of abuse were brought to light, "the jury would think maybe this girl had ulterior motives to testify that [petitioner] did these things."  (Resp't Ex. 10 at 14).  Petitioner's claim is therefore without merit.

      f.     Counsel failed to impeach any witnesses.

Petitioner alleges his counsel was ineffective because counsel did not question the states' witnesses about the victim's prior inconsistent statements concerning the location and manner of abuse.  Respondent contends petitioner's claim is without merit because it was counsel's chosen trial strategy to elicit the inconsistencies in the victim's statements, and because it would have been improper to impeach the witnesses with the victim's prior statements.

The Court agrees with Respondent and find petitioner's claim is without merit.  First, as Respondent points out, defense counsel could not have permissibly impeached the witnesses with the victim's prior inconsistent statements, because any inconsistency in the victim's statements challenged  the victim's credibility, not the witnesses'.  Second, counsel's decision to refrain from objecting to the introduction of the victim's inconsistent statements was the product

41

of his trial strategy to present the jury with all the inconsistencies in the victim's statements, and was therefore "virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690-91; (Resp't Ex. 10 at 19).

       g.      <u>Counsel failed to request any cautionary instructions</u>.

Petitioner has failed to provide any supporting facts or argument for his assertion. The Court therefore cannot evaluate the merits of petitioner's claim and must deny relief.

       h.      <u>Counsel failed to object to the State's introduction of alleged personal usage of alcohol and questions relating to alleged domestic violence</u>.

Petitioner has failed to provide any supporting facts or argument for his assertion. The Court therefore cannot evaluate the merits of petitioner's claim and must deny relief.

       i.      <u>Counsel failed to call or interview any witnesses</u>.

Petitioner claims his counsel was ineffective because counsel failed to call the victim's mother to testify at the trial. Respondent contends petitioner's claim is without merit because counsel's decision not to call the victim's mother was a matter of trial strategy.

The Court agrees with Respondent and finds counsel's decision to not call the victim's mother to testify was a matter of trial strategy that is "virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690-91. As counsel explained at the habeas hearing, he refrained from calling the victim's mother as a witness because of her "tainted past" and the danger of her being a "wild card" witness. (Resp't Ex. 10 at 15, 36).

       j.      <u>Counsel failed to request an independent psychological evaluation of the alleged victim and further failed to request a copy of the alleged victim's counseling sessions</u>.

Petitioner alleges his counsel was ineffective because counsel failed to obtain the victim's records from her treating psychologist, Sharon McMillen. Respondent responds to petitioner's

claim only insofar as stating counsel had no duty to call an independent psychologist to rebut Ms. Beeler's testimony.

The Court finds petitioner's claim is without merit. Regarding counsel's alleged failure to call an independent psychological expert, the court reiterates its analysis and finding from section "d," above, that counsel was not ineffective for failing to call an independent psychological expert. Regarding counsel's alleged failure to obtain the records from Ms. McMillen, there is no evidence counsel had a duty to obtain the records because there is no evidence counsel was even aware Ms. McMillen was the victim's treating psychologist. (See Resp't Ex. 10 at 17); Gray v. Lucas, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982) [holding "while a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance."]. Furthermore, petitioner has failed to demonstrate how he was prejudiced by counsel's failure to obtain the records, because there is no evidence Ms. McMillen's records would have changed the outcome of petitioner's case.

     k.     <u>Counsel failed to request a lessor included offense instruction</u>.

Petitioner has failed to provide any supporting facts or argument for his assertion. The Court therefore cannot evaluate the merits of petitioner's claim and must deny relief.

     l.     <u>Counsel failed to object to the prosecutor's improper remarks during closing arguments</u>.

Petitioner has failed to provide any supporting facts or argument for his assertion. The Court therefore cannot evaluate the merits of petitioner's claim and must deny relief.

m.      Counsel made no attempt to mount a defense.

Petitioner alleges his counsel was ineffective because his counsel failed to conduct an investigation to find evidence to support the "inconsistent story theory."  Respondent contends petitioner's claim is without merit because the record reveals counsel's attempts to present all the victim's inconsistent statements.

The Court agrees with Respondent and finds the record clearly documents counsel's attempts to discredit the victim via the introduction of her inconsistent statements.  While petitioner alleges a more thorough investigation would have revealed additional evidence to support the "inconsistent story theory," petitioner fails to specify what evidence he believes was left undiscovered by counsel and how that evidence would have changed the outcome of his trial.  See Strickland, 466 U.S. at 694.  Accordingly, his claim fails.

n.      Counsel failed to request a 702 hearing.

Petitioner alleges his counsel was ineffective because he failed to request a Rule 702 hearing.  Respondent contends petitioner's argument is without merit because counsel did object to the scope of admissible expert testimony, and because a Rule 702 hearing was not a prerequisite to the admission of Ms. Rosinski's or Ms. Beeler's testimony.

The Court finds petitioner's claim is without merit.  As noted by Respondent, trial counsel did, in fact, object to the scope of the Ms. Beeler's testimony and obtained a ruling that prohibited Ms. Beeler from identifying Stephen Luci as the sexual abuser.  Additionally, Ms. Rosinski's and Ms. Beeler's testimony were  properly admitted pursuant to Rule 803(4) of the West Virginia Rules of Evidence (as the victim's treating sources), and the state sufficiently established the experts' qualifications to offer medical opinions on whether the victim had been abused.  (See

Resp't Ex. 9 at 376-77, 402). There is therefore no evidence petitioner was prejudiced by counsel's failure to request a formal Rule 702 hearing.

o. Counsel failed to contest the fact that petitioner was subject to double jeopardy.

Petitioner claims his counsel was ineffective because he failed to argue that petitioner's felony trial constituted double jeopardy. Respondent contends petitioner's claim is without merit, and the Court agrees. As established above in Ground One, jeopardy did not attach at the abuse and neglect proceeding.

F. **GROUND FOUR - Whether Petitioner's Right to Confrontation was Violated, Resulting in Petitioner's Illegal Trial, Conviction, Sentences, and Incarceration.**

Petitioner alleges he was denied "his right to confrontation as guaranteed by Article III, § 14 of the West Virginia Constitution and the 6th Amendment of the United States Constitution which resulted in [his] illegal conviction, sentences, incarceration." Specifically, petitioner contends he was denied the opportunity to effectively cross-examine the victim because although she testified at trial, her out-of-court statement to Trooper Johnson was not recorded such that petitioner had to rely on Trooper Johnson's interview notes. Respondent contends petitioner's claim fails because a defendant's right to confrontation is not violated by the introduction of hearsay statements made by a witness who also testifies at the trial.

Regarding petitioner challenge to the state court's interpretation of the West Virginia Constitution, the Court is barred from reviewing the issue because "[f]ederal habeas relief does not lie for errors of state law." See Thomas, 170 F.3d at 470.

Regarding petitioner's invocation of the 6th Amendment Right to Confrontation, petitioner's claim is without merit. The Sixth Amendment's Confrontation Clause provides, "in all criminal prosecution, the accused shall enjoy the right . . . to be confronted with the witnesses

against him." U.S. Const. Amend. VI.  The confrontation clause prohibits the admission of hearsay statements by an unavailable declarant who was not previously cross-examined.  See Crawford v. Washington, 541 U.S. 36, 59 (2004).  However, the confrontation clause does not prohibit the admission of hearsay statements made by a declarant testifying at trial, Green, 399 U.S. at 158, because in such an instance, the petitioner is provided a full opportunity to cross examine the declarant on her previous statements.  Petitioner's claim therefore fails.

## IV.  RECOMMENDATION

For the foregoing reasons, it is hereby RECOMMENDED Respondent's Motion for Summary Judgment (Doc. No. 25) be **GRANTED** and petitioner's Petition for Writ of Habeas Corpus (Doc No. 1) be **<u>DENIED</u>** with prejudice and dismissed from the docket.

Within ten (10) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).


The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and counsel of record, as applicable.

Dated: May 27, 2008

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE